## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RONALD A. BAKER, and JOYCE BAKER, husband and wife, | ) No. 76218-4-I<br>)<br>) |
| Appellants/Cross-Respondents, | )<br>) |
| v. | ) DIVISION ONE<br>) |
| FIREMAN'S FUND INSURANCE COMPANY; AMERICAN INSURANCE COMPANY, a member of the FIREMAN'S FUND INSURANCE COMPANIES; NORTH PACIFIC INSURANCE COMPANY; ONEBEACON INSURANCE COMPANY; RUBATINO REFUSE REMOVAL INC., a Washington corporation; BRUNSWICK CORPORATION, owner of BRUNSWICK FAMILY BOAT CO., INC., manufacturer of Bayliner boats; and SNOHOMISH COUNTY, a political subdivision of the State of Washington, | ) ORDER WITHDRAWING<br>) OPINION AND SUBSTITUTING<br>) OPINION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Respondents/Cross-Appellants. | )<br>) |

The court has determined that the opinion filed on September 17, 2018, shall be withdrawn and a substitute published opinion be filed. Now, therefore, it is hereby

ORDERED that the opinion filed on September 17, 2018, is withdrawn and a substitute published opinion shall be filed.

DATED this 15th day of October , 2018

_Mann, ACJ._

_Leach, J._

_Dwyer, J._

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

RONALD A. BAKER, and JOYCE
BAKER, husband and wife,

      Appellants/Cross-Respondents,

v.

FIREMAN'S FUND INSURANCE
COMPANY; AMERICAN INSURANCE
COMPANY, a member of the
FIREMAN'S FUND INSURANCE
COMPANIES; NORTH PACIFIC
INSURANCE COMPANY;
ONEBEACON INSURANCE
COMPANY; RUBATINO REFUSE
REMOVAL INC., a Washington
corporation; BRUNSWICK
CORPORATION, owner of
BRUNSWICK FAMILY BOAT CO., INC.,
manufacturer of Bayliner boats; and
SNOHOMISH COUNTY, a political
subdivision of the State of Washington,

      Respondents/Cross-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 76218-4-I

DIVISION ONE

PUBLISHED OPINION

FILED: October 15, 2018

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2018 OCT 15 AM 9: 48

MANN, A.C.J. — Ronald and Joyce Baker filed suit against their insurance

companies, Fireman's Fund Insurance Company and American Insurance Company

(collectively Fireman's Fund), for breaching their duty to defend. The litigation ended in

No. 76218-4-I/2

a settlement preserving the Bakers' claim for attorney fees for resolution by the trial court. Using the lodestar method, and a 1.3 multiplier, the trial court awarded the Bakers $1,209,757.25 for attorney fees and costs. The Bakers appeal and argue that the trial court erred in (1) failing to make them whole under Olympic Steamship Co., v. Centennial Ins. Co., 117 Wn.2d 37, 811 P.2d 673 (1991), (2) excluding some of their claimed fees, and (3) applying only a 1.3 multiplier to the lodestar. Fireman's Fund cross appeals.[1] Because the trial court acted well within its discretion, we affirm.

I

The Bakers owned and operated the Sisco Woodwaste Landfill (landfill) in Snohomish County. The Bakers opened the landfill in 1978 and operated it for six years until 1984. The Bakers purchased insurance policies for the landfill from Fireman's Fund covering the years between 1978 and 1986. The Bakers also purchased a three year policy from North Pacific Insurance Company, the predecessor to OneBeacon Insurance Company, in January 1986. OneBeacon cancelled this policy after only a year.

The landfill received waste from a number of generators, including Snohomish County and incinerator ash from a Boeing waste-to-energy facility. After the ash was found to contain hazardous materials, the ash deliveries were stopped. In 1983, the Washington Department of Ecology (Ecology) found that leachate had escaped from the landfill. A year later, in 1984, the Snohomish Health District (SHD) suspended the Bakers' operating permit and ordered the Bakers to stop operating the landfill.

---

[1] Respondent/Cross-Appellants Fireman's Fund filed a motion to Strike Appellant/Cross-Respondent's Reply Brief. The motion is denied.

-2-

The landfill continued to be problematic after its closure. In August 2000, the SHD directed the Bakers to respond to the leachate problem and obtain a permit to perform closure activities in accordance with the SHD sanitary code.

In October 2000, the Bakers contacted Fireman's Fund about insurance coverage. Fireman's Fund responded and informed the Bakers that it had concluded that some or all of the claims alleged may not be covered and "specifically reserve[d] the right to assert any and all defenses to coverage." The letter informed the Bakers that Fireman's Fund reserved the right to file a declaratory judgment action to determine coverage and that it would seek reimbursement for all monies paid toward the defense or representation if it was determined there was no coverage.

In May 2001, the SHD sued the Bakers alleging permit violations, violations of a SHD order, and nuisance. The Bakers appeared pro se and did not retain counsel. A default judgment was ultimately issued against the Bakers. The landfill was subsequently identified on Ecology's hazardous sites list and ranked a "2" out of a scale of 1 to 5 with 1 representing the highest level of concern.

In November 2005, Fireman's Fund changed its coverage determination and agreed to participate in the "defense of claims asserted against [the Bakers] by the SHD and DOE that the Landfill and adjacent property and/or associated groundwater are contaminated." It agreed to provide this defense subject to a full reservation of its rights. It also appointed Marten Law Group (Marten Law) to represent the Bakers.

In October 2006, Marten Law identified 12 waste generators and transporters who, by disposing potentially hazardous waste at the landfill, may have been potentially liable parties (PLPs). Marten Law identified several options for dealing with cleanup

-3-

liability at the landfill including seeking contribution from the PLPs and settlement with the Ecology and Snohomish County.

In May 2007, the Bakers retained Hackett Beecher & Hart (HBH) on a contingency fee agreement. The contingency agreement required the Bakers to pay HBH one-third of the "gross amount recovered." With HBH as their attorney, the Bakers then filed suit against Fireman's Fund and one of the PLP's identified by Marten Law. The Bakers alleged that Fireman's Fund (1) breached its contractual duties to investigate, defend, and indemnify them for costs incurred under the Model Toxic Control Act (MTCA)[2], (2) acted negligently and in bad faith, and (3) engaged in unfair claims settlement practices in violation of the Consumer Protection Act (CPA).[3] In May 2008, Fireman's Fund agreed to the Bakers' request to fund legal action against the PLPs using Marten Law.

In April 2009, after Fireman's Fund unsuccessfully moved to sever the Bakers' insurance-related claims from claims against PLPs, the parties stipulated, at the trial court's direction, that "actions or positions taken by [Fireman's Fund] in [its] own defense as parties to this suit . . . shall not be used or referred to in any way in connection with any of the causes of action [the Bakers] have asserted or will assert against [Fireman's Fund]."

In December 2009, in an effort to avoid foreclosure, the Bakers asked Fireman's Fund if it would pay the Bakers' outstanding property tax bill of $70,286.14. Fireman's Fund agreed and promptly paid the bill.

---

[2] Chapter 70.105D RCW.
[3] Chapter 19.86 RCW.

From August 2010 until the summer of 2013, the Bakers' case against Fireman's Fund was pending but inactive. This was because of the lengthy time periods necessary to gather environmental data, present findings to Ecology, await the Ecology's opinion, and then gather more data.

In July 2014, the court continued trial to March 2015 and ordered the parties to mediate within 30 days of receiving Ecology's opinion on environmental remediation. The parties received Ecology's opinion letter in December 2014, and began mediation in January 2015.

Over the course of three mediation sessions, the parties resolved their disputes. The first settlement agreement resolved the disputes over the landfill remediation between the Bakers, Snohomish County, and two PLPs. Under this settlement, Snohomish County agreed to take ownership and full responsibility for remediating the landfill and closing it in return for payments on behalf of the Bakers and the two PLPs.

The Bakers and Fireman's Fund then resolved their dispute by entering a settlement agreement, buy back of insurance policies, and release of all claims. In exchange for monetary payments, the Bakers agreed to release all claims against Fireman's Fund. The settlement, however, left open the Bakers' ability to separately pursue attorney fees through the trial court:

> Nothing in this Agreement shall foreclose the Bakers' ability to pursue attorney fees from Fireman's Fund based on *Olympic Steamship*, alleged Consumer Protection Act (CPA) violations, and/or bad faith, which attorney fee claim will be resolved on motion practice in the Lawsuit. The Bakers will file their motion for their claim for fees within 10 days of this fully executed Agreement, or as soon as practicable thereafter given the court's and the parties' availability for hearing the motion. The parties agree to abide by the briefing schedule set forth in CR 56(c), i.e., the Bakers' motion shall be filed not later than 28 calendar days before the

hearing, any opposition shall be filed not later than 11 calendar days before the hearing, and any rebuttal shall be filed not later than five (5) calendar days before the hearing. For purposes of the Bakers' motion for attorney fees, CPA violations need not be proven, although Fireman's Fund makes no concessions that a specific fee entry relates to the CPA claim.

Consistent with the settlement, on June 10, 2016, the Bakers petitioned the trial court for an award of their attorney fees and costs. The petitions sought fees pursuant to either Olympic Steamship, the CPA, or under equity due to bad faith. The Bakers asked the court to apply the lodestar method as the proper measurement of reasonable attorney fees. In support, the Bakers offered declarations from several local attorneys in support of a reasonable hourly rate, along with time records to support the number of hours billed. Under the lodestar method, the Bakers sought $1,147,435 in attorney fees. The Bakers asked the trial court to apply a "liberal multiplier" of 2.5 times the base amount in recognition of the unusual, difficult and risky nature of the litigation. The Bakers requested a total of $2,875,177 in attorney fees and costs. The trial court entered findings and conclusions concurring that the Baker's requested hourly rates were reasonable but reducing some of the hours billed for matters it deemed either unnecessary or inappropriate. The court determined that the proper lodestar amount was $930,582.50. The court then used a 1.3 times multiplier concluding that "it is appropriate to take into account the exceptionally long pendency of this case during which time HBH received no payment of fees or reimbursement for costs, the exceptionally favorable result which they obtained on behalf of their clients, and the risk (albeit not large) that no recovery might be obtained." The court awarded the Bakers' $1,209,757.25 for reasonable attorney fees and $26,634.06 in reasonable costs.

After the trial court denied the Bakers' motion for reconsideration, the Bakers appealed. Fireman's Fund cross appealed.

II

There are two relevant inquires in determining an award of attorney fees: first, whether the prevailing party is entitled to legal fees, and second, whether the award of attorney fees is reasonable. Public Util. Dist. 1 v. International Ins. Co., 124 Wn.2d 789, 814, 881 P.2d 1020 (1994). Whether a party is legally entitled to recover attorney fees is a question of law that we review de novo. King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper JV, 188 Wn.2d 618, 625, 398 P.3d 1093 (2017). Whether the amount of fees awarded was reasonable is reviewed for an abuse of discretion. "In order to reverse an attorney fee award, an appellate court must find the trial court manifestly abused its discretion." Pham v. Seattle City Light, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). "That is, the trial court must have exercised its discretion on untenable grounds or for untenable reasons." Pham, 159 Wn.2d at 538.

We first examine whether the Bakers were legally entitled to recover attorney fees. In general, "Washington follows the American rule in awarding attorney fees." Dayton v. Farmers Ins. Group, 124 Wn.2d 277, 280, 876 P.2d 896 (1994). Under the American rule, a court may award attorney fees only if that award is authorized by contract, statute, or a recognized ground in equity. Vinci Constr., 188 Wn.2d at 625. One such recognized equitable ground is the rule announced in Olympic Steamship. Under Olympic Steamship, "[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees." 117 Wn.2d at 54.

The parties do not dispute that the Bakers were the prevailing party and thus entitled to reasonable attorney fees under Olympic Steamship.[4] Consequently, our analysis focuses on whether the trial court abused its discretion in determining the Bakers' reasonable attorney fees.

III

The Bakers argue first that the trial court abused its discretion in failing to consider the "make whole" purpose of an award of attorney fees under Olympic Steamship. In essence, the Bakers assert that because the fee agreement with their attorneys would have obligated them to pay HBH one-third of the gross recovery from Fireman's Fund, any award of fees less than that amount does not make them whole. We disagree.

At the outset, we agree with the Bakers that the equitable purpose supporting an award of attorney fees under Olympic Steamship requires that the insured be made whole. As our Supreme Court has explained: "when an insurer unsuccessfully contests coverage, it has placed its interests above the insured. Our decision in Olympic Steamship remedies this inequity by requiring that the insured be made whole." McGreevy v. Oregon Mutual Ins. Co., 128 Wn.2d 26, 39-40, 904 P.2d 731 (1995); Panorama Village Condominium Owners Ass'n v. Allstate Ins. Co., 144 Wn.2d 130, 144, 26 P.3d 910 (2001). We disagree, however, with the Bakers' assertion that because the trial court failed to award attorney fees at a level commiserate with the contingency fee

---

[4] While Fireman's Fund argues in its briefing before this court that the Bakers were not the prevailing party under the settlement, during oral argument counsel conceded that the Bakers were the prevailing party.

agreement between the Bakers and HBH, it failed to make them whole and therefore abused its discretion.

The starting point, and indeed, the "primary consideration," in determining an appropriate award of attorney fees is reasonableness. Allard v. First Interstate Bank of Washington, N.A., 112 Wn.2d 145, 153, 768 P.2d 998 (1989). Thus, in order to assure that an insured is made whole under Olympic Steamship, the attorney fee award must include all reasonable attorney fees, including all expenses necessary to establish coverage. Panorama Village, 144 Wn.2d at 144.

One established method of determining a reasonable attorney fee award is the lodestar method. Mahler v. Szucs, 135 Wn.2d 398, 433, 957 P.2d 632 (1998). Under this method, the trial court first examines the attorneys' billing records and determines the number of hours that were reasonably expended in pursuing the litigation. Mahler, 135 Wn.2d at 433-34. The total number of hours reasonably expended is then multiplied by the reasonable hourly rate of compensation resulting in the lodestar fee. Mahler, 135 Wn.2d at 434. After the lodestar has been calculated, the court may then consider the necessity of adjusting the rate after considering factors not already taken into consideration including the contingent nature of the work. Mahler, 135 Wn.2d at 434; Scott Fetzer Co. v. Weeks, 122 Wn.2d 141, 150, 859 P.2d 1210 (1993).

No Washington court has held the lodestar method is the exclusive method to determine reasonable attorney fees.[5] By the same token, no Washington court has

_____

[5] For example, the Bakers' could have presented the trial court with their underlying contingency fee agreement and asked the court to determine if the agreement was reasonable under RPC 1.5(a) (the RPA governing reasonableness of attorney fees), and if so, award the Bakers the agreed one-third of the gross amount recovered from Fireman's Fund for fees. See Allard, 112 Wn.2d at 152-154 (approving

held that a trial court abuses its discretion by using the lodestar method in order to determine reasonable attorney fees. In this case, the Bakers agreed that the lodestar method was appropriate:

> the proper measurement of a reasonable attorney fee is the same: the Court determines a base award by using the lodestar calculation: the reasonable number of hours spent representing the plaintiff is multiplied by a reasonable hourly rate. . . . The Court then determines whether that base award should be subject to a multiplier, primarily on the basis of the contingent nature of the fee and the risk of no recovery at the inception of the case.

The trial court did not abuse its discretion by accepting the Bakers' argument that the lodestar method was proper for determining the Bakers' reasonable attorney fee award under Olympic Steamship.

IV

The Bakers next claim that the trial court abused its discretion by excluding fees for work that were not necessary to pursue the claims against Fireman's Fund. We disagree.

Under the lodestar method, "the party seeking fees bears the burden of proving the reasonableness of the fees." Mahler, 135 Wn.2d at 433-34. In determining the base lodestar, the trial court "'must limit the lodestar to hours reasonably expended, and should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time.'" Scott Fetzer, 122 Wn.2d at 151 (quoting Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983)). "The hours reasonably expended must be spent on claims having a 'common core of facts and

---

using contingency fee agreement to determine reasonable fees). But this is not what the Bakers did. The Bakers elected to follow the lodestar method.

related legal theories.'" Pham, 159 Wn.2d at 538 (quoting Martinez v. City of Tacoma, 81 Wn. App. 228, 242-43, 914 P.2d 86 (1996)). "Courts must take an active role in assessing the reasonableness of fee awards, rather than treating cost decisions as a litigation afterthought." Mahler, 135 Wn.2d at 434. The trial court is required to enter findings of fact and conclusions of law. Mahler, 135 Wn.2d at 435.

The Bakers claim that the trial court abused its discretion in excluding or reducing hours billed for four different matters. We address each in turn.

*Fees Related to Tax Foreclosure*

The Bakers' attorney time records show that they spent over 226 hours assessing the Bakers' outstanding tax bill and possible foreclosure on their property over the course of approximately 18 months. When the Bakers notified Fireman's Fund of the tax issue in December 2009, Fireman's Fund agreed to pay the long overdue bill within a week. The trial court excluded 211.7 hours spent on the Bakers' outstanding property tax bill and related foreclosure:

> Claims related to the property tax foreclosure proceedings against the landfill property, for 211.7 hours, totaling $61,280.00. While HBH obtained a favorable result for [the Bakers] by getting Fireman's Fund to pay the outstanding tax bill, this was not an item covered by the applicable insurance policies and should not be included in fees awarded against Fireman's Fund. Arguably it does not fall within the contingent fee agreement HBH had with the Bakers at all.

The Bakers failed to carry their burden to demonstrate these fees were appropriate. Because Fireman's Fund promptly paid the tax bill after being notified, and the property tax bill was at best tangential to the Bakers' claims against Fireman's Fund, the trial court did not abuse its discretion in denying the 211.7 hours spent on the foreclosure issue.

-11-

*Fees Related to PRP Claims*

In May 2008, at the Bakers' request, Fireman's Fund agreed to pay Marten Law to prosecute claims against the PRPs. There is no dispute that Fireman's Fund paid Marten Law in full. The Bakers sought recovery for additional attorney fees by HBH for litigation against the PRPs. Fireman's Fund did not oppose some of the claimed fees including time spent attending depositions of witnesses related to the PRP claims, time spent reviewing discovery, or time spent for updates from Marten Law. Fireman's fund did, however, object to time spent by HBH for preparing for depositions, strategy and assessment of claims, hours spent reviewing documents that consultants prepared for Marten Law, and other duplicative tasks. The trial court agreed with Fireman's Fund that some of these hours should be excluded:

> Fees related to [PLPs] which were pursued by [MLG] on behalf of [the Bakers], for 139.4 hours, in the amount of $58,292.50. [The Bakers] have not established that it was necessary to prevail on their insurance claims to incur these attorney hours when [MLG] had been retained by Fireman's Fund to represent them with regard to issues related to the landfill clean-up, including seeking contribution by third parties.

The Bakers argue that this time should have been included because the work related to the Bakers' insurance claims against Fireman's Fund. They point to specific entries where the trial court excluded time that was spent on issues relevant to both sets of claims, the Bakers' insurance claims and the PLP litigation led by MLG. The Bakers failed to carry their burden to demonstrate these fees were non-duplicative or necessary for the Bakers' claims against Fireman's Fund.

The trial court did not abuse its discretion in excluding 139.4 hours for duplicative work related to the PRP claims.

*Fees incurred litigating against OneBeacon*

The trial court excluded time spent litigating claims against OneBeacon, another insurer that had issued a policy to the Bakers from 1986 to 1987:

> Fees related to claims against One Beacon, for 142.6 hours, totaling $65,540.00. Plaintiffs have not established that it was necessary for them to pursue these claims when the contribution claims were being handled by [MLG] on behalf of [the Bakers].

The Bakers argue that excluding time litigating with OneBeacon was error because of the common-fund doctrine: Fireman's Fund is required to pay for the Bakers' fees incurred recovering a contribution from OneBeacon because that contribution ultimately lowered the amount that Fireman's Fund had to pay to Snohomish County. (OneBeacon contributed $300,000 to the County.) The Bakers claim that the trial court's factual mistake about OneBeacon's status—it was an insurer, but the court appeared to treat OneBeacon as if it were a PLP—compounded the court's error.

Here, excluding time billed on OneBeacon-related work was reasonable. First, the common-fund doctrine does not apply because in order to create the common fund, the insured must recover from the "at-fault party" and OneBeacon is not the at-fault party. Matsyuk v. State Farm Fire & Cas. Co., 173 Wn.2d 643, 650, 272 P.3d 802 (2012); see Mahler, 125 Wn.2d at 428 (discussing doctrine in context of insured recovering from tortfeasors, not another insurer).

Second, Fireman's Fund likely secured its right to contribution from OneBeacon at the time the Bakers tendered their claim to OneBeacon. This right was created by the continuous-trigger doctrine: when an insured sustains continuous damages all insurers providing coverage for any portion of the total time period of the continuing

damage are jointly and severally liable for the entire amount of damage. Am. Nat'l Fire Ins. Co. v. B & L Trucking & Const. Co., Inc., 134 Wn.2d 413, 424, 951 P.2d 250 (1998). Here, since the landfill's environmental damage continued over time, under the continuous-trigger doctrine both insurers would have been jointly and severally liable for the entire amount of the damage at the time the Bakers tendered a claim to them.

Finally, the Bakers' argument that the trial court's factual mistake as to OneBeacon's identity somehow led to it misapplying the common-fund doctrine is unpersuasive. OneBeacon's identity is irrelevant to Fireman's Fund's liability under insurance policies.

The trial court did not abuse its discretion in excluding 142.6 hours for litigating claims against OneBeacon.

*Fees for acting as the Bakers' personal counsel*

The trial court excluded time that HBH spent as the Bakers' personal counsel:

> Fees related to acting as personal counsel for [the Bakers] with regard to tax consequences of the settlement to them and other issues, for 46.7 hours, totaling $21,000.00. These issues were undoubtedly of importance to [the Bakers] but were not necessary to establishing Fireman's Fund[']s obligations under the insurance contracts, and appear to have been incurred after settlement was reached in March 2015.

The Bakers argue that the lodestar should include time their counsel advised them on the settlement's tax effects for two reasons. First, Olympic Steamship and the CPA allow a prevailing party to recover all of its fees, not just fees related to liability issues. Second, the CR 2A Agreement did not settle the case because payment from Fireman's Fund was contingent on the rest of the parties settling with the Bakers.

The trial court recognized that the issues regarding the tax consequences of the settlement were important to the Bakers but irrelevant to establishing Fireman's Fund's liability to the Bakers. Further, whether the Bakers would have reneged on the CR 2A Agreement had HBH not advised them is irrelevant: the record shows that they settled their claims against Fireman's Fund and that the parties in fact agreed to a settlement in principle.

The trial court did not abuse its discretion in excluding 46.7 hours for personal counsel.

V

The Bakers finally claim that the trial court abused its discretion by applying a 1.3 multiplier instead of their requested 2.5 multiplier. Again, we disagree.

After the court has calculated the lodestar, it may adjust it by applying a multiplier: "the lodestar fee . . . may, in rare instances, be adjusted upward or downward in the trial court's discretion." Mahler, 135 Wn.2d at 434. "Adjustments to the lodestar product are reserved for 'rare' occasions." Miller v. Kenny, 180 Wn. App. 772, 825, 325 P.3d 278 (2014). The lodestar is "presumed to adequately compensate an attorney." Miller, 180 Wn. App. at 825.

Courts can adjust the lodestar based on factors not already taken into consideration including, the benefit to the client and the contingency or uncertainty in collecting the fee. Scott Fetzer, 122 Wn.2d at 150.

The trial court agreed with the Bakers that the reasonable hourly rate did not reflect the quality of the work performed. The court disagreed, however, that the

Baker's requested 2.5 times multiplier was appropriate and instead applied a 1.3 multiplier. The court explained:

> while this case was complicated by long delays in part due to waiting on decisions from the Washington State Department of Ecology, the number of parties, and the combination of claims, it did not present complex or novel issue with regard to the insurance coverage issues. Furthermore, the probability of ultimately prevailing on the coverage issues was high because of Fireman's Fund's lack of responsiveness to Plaintiffs' inquiries from 2001 to 2005 and early assertions that there was no coverage under the policies. There is no evidence that HBH was required to turn down other profitable work because of this case.
>
> After considering the entire record, the court is not persuaded that Plaintiffs have established that a 2.5 multiplier is appropriate. However, the court concludes that it is appropriate to take into account the exceptionally long pendency of this case during which time HBH received no payment of fees or reimbursement for costs, the exceptionally favorable result which they obtained on behalf of their clients, and the risk (albeit not large) that no recovery might be obtained. For these reasons, the court concludes a multiplier of 1.3 is supported by the record. This results in an attorney fee award of $1,209,757.25.

The court awarded a multiplier because of "the risk (albeit not large) that no recovery might be obtained," the length of time it took to resolve, and that HBH recovered no fees or costs for up to nine years. This are proper reasons supporting a multiplier. Scott Fetzer, 122 Wn.2d at 150. The court's decision also took into account the contingent nature of the Bakers' fee agreement. The court's decision is supported by its finding and substantial evidence. The trial court did not abuse its discretion in awarding a 1.3 times multiplier to the lodestar fee.

VI

Fireman's Fund cross appeals and challenges (1) the trial court's failure to deduct hours for additional unsuccessful, duplicated, and unproductive work, and (2) the hourly rates approved for the Bakers' attorneys. We address each in turn.

*Additional Exclusions*

Fireman's Fund claims first that the trial court erred in approving the following additional fees claimed by the Bakers: (1) 43 hours spent on a motion for summary judgment that was never filed; (2) time spent consulting with the Bakers regarding settlements that had already been agreed to; (3) time spent submitting claims for other defense expenses after the parties had settled; and (4) communications and meetings with the assessor's office and environmental consultants. We disagree.

The trial court rejected Fireman's Fund's argument that this work should be excluded:

> Fireman's Fund has asserted that other fees should also be deducted. These include fees they designate as administrative, correcting discovery responses, duplicative/excess time, unnecessary/unsuccessful, vague[,] and not apparently related to the claims against Fireman's Fund. The court does not agree. For example, counsel is required to correct and supplement discovery responses. The charge for this is minimal, and the need is not out of line with what occurs in many cases. The time spent on researching a motion for summary judgment is not unreasonable and cannot be said to be unnecessary. The benefits of such research would still be applicable for trial and mediation of claims.

The record before us demonstrates that the court considered the entire record and found that this work by the Bakers' attorneys was reasonable and necessary. While Fireman's Fund disagrees with the court's decision, it fails to show that the court's decision was manifestly unreasonable. The trial court did not abuse its discretion in excluding hours from the lodestar.

*Hourly Rates*

Fireman's Fund claims that it was error to calculate the lodestar without evidence of HBH's actual hourly rates. We disagree.

When attorneys have an established rate for billing clients, that rate is likely a reasonable rate. McGreevy, 90 Wn. App. at 283 (citing Bowers, 100 Wn.2d at 597). The usual rate is not, however, conclusively a reasonable fee and other factors may necessitate an adjustment. The court may also consider the level of skill, time limits imposed by the litigation, the attorney's reputation, and the undesirability of the case, and on local rates charged by attorneys with similar skills and experience. McGreevy, 90 Wn. App. at 293; Miller, 180 Wn. App. at 820-21.

Here, the Bakers did not offer evidence of actual hourly rates charged by HBH. As the trial court explained, the fee agreement between the Bakers and HBH was contingent and consequently, HBH was not charging an hourly rate for its work for the Bakers. Instead, the trial court based its determination of relevant rates on declarations from several local attorneys that do similar work in the relevant legal community. The trial court concluded: "Based on the evidence presented, the hourly rates set forth above are reasonable for the type of legal work performed in this case in the Puget Sound legal community for attorneys and paralegals of similar skill, experience, and reputation." The trial court's determination of reasonable hourly rates was supported by substantial evidence and was not an abuse of discretion.

We affirm the trial court's fee award.[6]

_____
Mann, ACJ

WE CONCUR:

_____                    _____
Leach, J.                                   Dwyer, J.

---
[6] The Bakers request attorney fees on appeal "pursuant to <u>Olympic Steamship</u> and the [CPA] and RAP 18.1." We decline to award the Bakers fees because they do not prevail.