IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WAKE UP, INC., a Washington corporation; SVN CORNERSTONE, LLC, a Washington limited liability company; and DILLANOS COFFEE ROASTERS, INC., a Washington corporation, | ) ) ) ) ) ) ) | No. 39740-8-III |
| Respondents, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| ROASTERS HOLDINGS, LLC, a Washington limited liability company, a/k/a HEYDEN EMPIRE, LLC; WESLEY HEYDEN and SHANNON HEYDEN, a Washington marital community, also d/b/a RESILIENT COFFEE ROASTERS, LLC a/k/a HEYDEN VENTURES, LLC, HEYDEN PROPERTIES, LLC, ROASTERS FRANCHISING, LLC, and ROASTERS COFFEE, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Appellants, | ) ) | |
| BRSO PNW XX LLC; BLACK ROCK COFFEE HOLDINGS, LLC, a Delaware limited liability company; BLACK ROCK COFFEE INVESTMENTS, LLC, a Delaware limited liability company; and BLACK ROCK COFFEE BAR, LLC, an Oregon limited liability company, | ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

FEARING, J. — Appellants Roasters Holdings LLC (Roasters) and Resilient Coffee Roasters LLC (Resilient) reneged on an agreement to sell a coffee shop chain and roastery to Wake Up, Inc. (Wake Up) and Dillanos Coffee Roasters, Inc. (Dillanos). Instead, because it was time to get greedy, Roasters and Resilient sold their business assets to interloper Black Rock Coffee Holdings, LLC (Black Rock) and related companies. Wake Up and Dillanos sued Roasters and Resilient for specific performance of the sale.

Wake Up and Dillanos also sued Black Rock for tortious interference with business expectancy. The three sides agreed to arbitrate. The arbitration panel granted Wake Up and Dillanos specific performance of the sale and delay damages against Roasters, Resilient, and Black Rock.

Because Black Rock, Resilient, and Roasters refused to cooperate in completing the sale, Wake Up and Dillanos brought this suit to confirm the arbitration award for specific performance. Even after the confirmation of the order of specific performance, Roasters and Resilient refused to sign documents to close the sale. Black Rock, Wake Up, and Dillanos filed a motion to compel Roasters and Resilient to sign closing documents. The superior court granted this relief and awarded Wake Up and Dillanos an award of reasonable attorney fees and costs. Roasters and Resilient appeal the order compelling it to close the sale because a revised escrow agreement purportedly changed

2

the terms of closing. Roasters and Resilient also challenged the attorney fees and costs awarded to Wake Up and Dillanos. Because the sale agreement requires arbitration of disputes of the amount of payment under the sale, we refuse to entertain the merits of Roasters and Resilient's appeal. We affirm the superior court's award of reasonable attorney fees and costs and award Wake Up and Dillanos fees and costs on appeal.

FACTS

We introduce appellants. Appellants Wesley and Shannon Heyden owned Roasters Holdings, LLC and Resilient Coffee Roasters, LLC. Roasters Holding owned thirteen coffee shops in the Tri-Cities and one in Walla Walla. Resilient Coffee operated a coffee roastery.

In 2020, Wes Heyden wished to sell Roasters Holding's coffee shops. On August 31, 2020, Heyden, on behalf of Roasters Holding, executed a commission agreement engaging SVN Cornerstone (SVN) to broker the sale. The agreement listed the purchase price for Roasters Holding's business assets at $6 million or an amount mutually agreed between the buyer and Roasters Holding. At that time, Heyden had already contacted respondents Wake Up, Inc., and Dillanos Coffee Roasters, Inc., about a potential purchase. If Wake Up and Dillanos purchased the business, Roasters agreed to pay

respondent SVN a commission equal to five percent of the purchase price. SVN is a commercial brokerage firm based in Spokane, Washington.

On September 1, 2020, Roasters executed a letter of intent (LOI) with Wake Up, which delineated the terms under which Wake Up would acquire substantially all of the assets of Roasters. The LOI established a purchase price of $6 million, inserted a confidentiality clause in section 7, and enclosed an exclusive dealing provision in section 8.

Between August 31 and December 2020, SVN invested substantial time assisting with the identification, collection, and exchange of due diligence materials to facilitate the closing of the sale of Roasters' business. During this period, Dillanos agreed to purchase the assets of Resilient. On December 18, 2020, Roasters and Resilient, as sellers, and Wake Up and Dillanos, as buyers finalized all terms for an asset purchase agreement (December 2020 APA).

Under the December 2020 APA, Wake Up agreed to pay $6,200,000 for the Roasters assets, and Dillanos agreed to pay $1,800,000 for the Resilient assets. Section 2.3 of the APA addressed the purchase price. Subsection 2.3 declared:

> (a) Assets Purchase Price. The total Purchase Price for the Assets is $8,000,000 . . .with . . . the Purchase Price subject to adjustment as provided for herein, including as related to the Working Capital Target. The Working Capital will be calculated in accordance with the methodology set forth in the Valuation Report, and if the Final Working

> Capital Amount is less than the Working Capital Target, then the Final Purchase Price shall be reduced by that differing amount; if the Final Working Capital Amount is more than the Working Capital Target, then the Final Purchase Price shall be increased by that differing amount.

Clerk's Papers (CP) at 3526. Later subsections of section 2.3 outlined the method by which the parties would calculate the final working capital amount for purposes of adjusting the purchase price at closing. The language included accounts receivable and inventory in the final working capital amount. Under the language, the liabilities assumed by the buyer would be deducted from the purchase price. Those liabilities included honoring gift cards and loyalty cards previously issued by Roasters to its customers and personal time off owed to employees.

Section 2.9 of the APA demanded arbitration of any dispute concerning the final amounts transferred at closing.

> (a) Sellers shall have fifteen (15) days (the "Dispute Period") following receipt of the final determination of the Final Closing Balance Sheet, the Accounts Receivable Report or the Inventory Settlement Report, as the case may be, from buyers to dispute that any of the elements of or amounts reflected on such a statement (a "Dispute") were not calculated in accordance with this agreement.
> (b) If Buyers and Sellers are unable to resolve any Dispute within the 30-day period following Buyers' receipt of a Dispute Notice, the parties hereto shall select by mutual agreement another regionally recognized certified public accounting firm . . . to arbitrate the dispute.

CP at 3535. Wake Up and Dillanos signed the December 2020 APA. Roasters and Resilient expressed their intent to sign, but continually delayed signing.

5

Contemporaneously with the finalization of the December 2020 APA, Wesley Heyden, owner of Roasters and Resilient, solicited offers from entities that we collectively label "Black Rock." Those entities include Black Rock Coffee Holdings, LLC; Black Rock Coffee Investments, LLC; Black Rock Coffee Bar, LLC; and BRSO PNW XX, LLC. An arbitration panel later ruled that Roasters and Resilient's communications with Black Rock violated the LOI's terms, particularly its confidentiality provision. Roasters and Resilient also explored avoiding payment of SVN's commission by pursuing a sale to Black Rock without the assistance of SVN.

Derek Tonn, Roasters Holding's Chief Executive Officer, wrote to Heyden in a text message:

> Black Rock will up full exit offer 500k or more compared to wake ups. He threw out $750K also. Probably would go higher. You would save on sale commission too since direct deal.
> . . . .
> Wild stuff. My take is you can afford to play aggressive hand here. You have wake ups offer. Black Rock wants real bad. Worst case both fall through (not likely) and I keep running show until value even higher next year.
> Or play safe and just sign wake up deal. Boring . . . my gut says black rock involvement would be better in long run for all. Time to be greedy.

CP at 5854.

Black Rock later agreed to purchase the Roasters and Resilient businesses for

6

$9 million. Black Rock assumed control and operation of the Roasters stores in January 2021. The Purchase and Sale Agreement ("Black Rock APA") with Black Rock included a provision requiring Black Rock to pay up to $500,000 in litigation costs to defend against a suit brought by Wake Up and Dillanos.

On January 20, 2021, Wake Up and Dillanos filed suit against Roasters and Resilient. Wake Up and Dillanos sought a temporary restraining order (TRO) and specific performance of the September 2020 LOI. Wake Up and Dillanos alleged that the LOI constituted a binding contract and requested an order compelling Roasters and Resilient to sign the December 2020 APA. Black Rock intervened in the lawsuit because the specific performance remedy would unwind the sale to Black Rock. Wake Up and Dillanos subsequently amended their complaint to include a claim, against Black Rock, for tortious interference with the September 2020 LOI.

On February 9, 2021, the trial court granted an order that temporarily restrained the sale of Roasters and Resilient's assets to Black Rock. By that date, Black Rock already operated the coffee stores and controlled the business assets. Roasters and Resilient later received $6 million of the $9 million purchase price from Black Rock.

In October 2021, all parties executed an agreement to arbitrate the pending disputes before a panel of three arbitrators. This agreement was separate from section 2.9 in the December 2020 APA. The agreement outlined the arbitration procedure and

granted the arbitrators authority to award specific performance. The arbitration

agreement also recognized the trial court could enforce any arbitration award. On

November 10, 2021, the trial court, pursuant to the agreement between all parties, entered

an order partially staying the lawsuit and referring the disputes to arbitration before a

panel of three arbitrators.

On September 1, 2022, following two weeks of arbitration, the arbitration panel

issued an interim award finding that Roasters and Resilient breached their agreements

with Wake Up and Dillanos and that Black Rock tortiously interfered in Wake Up and

Dillanos' contracts to purchase Roasters and Resilient. The arbitration panel concluded

that monetary damages alone could not fully compensate Wake Up and Dillanos for their

harm. The panel awarded Wake Up and Dillanos specific performance of the purchase of

the assets of Roasters and Resilient, delay damages, and reasonable attorney fees and

costs. The panel ordered "specific performance of the [September 2020] LOI by signing

the [December 2020] APA, and specific performance of the APA by enforcing its terms."

CP at 3413.

According to the interim award, Wake Up and Dillanos' purchase of Roasters and

Resilient's assets would have closed by March 1, 2021, but for the wrongful acts of

Roasters, Resilient, and Black Rock. The arbitration panel expected the sale to now close

on November 30, 2022. The panel assessed delay damages of $898,250 for Wake Up and

$251,250 for Dillanos through November 30, 2022. If closing did not occur before the end of November 2022, Wake Up would receive an additional $54,300 per month and Dillanos would receive an additional $11,650 per month in delay damages. The arbitrators quieted title, in the respective names of Wake Up and Dillanos, to the Roasters and Resilient assets earlier transferred to Black Rock. The interim award demanded that Roasters and Resilient repay Black Rock for the purchase price the latter paid for the assets.

A final arbitration award later superseded this interim award. The final award confirmed the specific performance remedy as written in the interim award. The final award also ruled that, if specific performance could not be implemented due to any defendant's failure to act in good faith, Wake Up and Dillanos would recover $5,894,450 in damages against Roasters, Resilient, and Black Rock, jointly and severally. The arbitration panel awarded SVN its broker fee.

Wake Up, Dillanos, and SVN moved to confirm the final arbitration award, including the specific performance remedy. In its motion, SVN also sought an additional award of attorney fees and costs pursuant to RCW 7.04A.250(3).

The superior court confirmed the arbitration panel's award of specific performance of the December 2020 APA. The court directed the parties to coordinate the closing of the asset transfer, and, if they were unable to do so, the court would appoint a special

master to oversee the process. On November 28, 2022, the court issued a letter ruling

that declared:

> Specific performance in this case will require transfer of business(es) capable of being operated pending the prompt rebranding efforts by the Wake Up/Dillanos entities.

CP at 1752-53. Despite this guidance, the parties did not agree on the process for

closing the transaction and transferring the assets.

On December 19, 2022, the superior court granted a motion by Wake Up,

Dillanos, and SVN to confirm the arbitration award and appointed attorney Peter

Grabicki as Special Master. The court also entered a judgment awarding Wake Up and

Dillanos $1,370,154.59 in attorney fees and costs against Wesley and Shannon Heyden,

Roasters, and Resilient, jointly and severally.

On January 3, 2023, special master Peter Grabicki recommended that Black Rock,

despite not being a party to the December 2020 APA, be compelled to execute a new

agreement with Wake Up and Dillanos, which the court would then enforce through

specific performance. This new agreement would echo the December 2020 APA, the

subject of the arbitration panel's award of specific performance. Grabicki's proposal

conflicted with the confirmed arbitration award because it required the participation of

Black Rock. Nevertheless, Wake Up, Dillanos, and SVN, on one side, and Black Rock,

on the other side, sought to follow the recommendation of the special master. The parties

parleyed toward an agreement transitioning the sold assets from Black Rock to Wake Up and Dillanos. Roasters and Resilient refused to participate in the discussions among Black Rock, Wake Up, and Dillanos and refused to cooperate in the transition of the assets.

The arbitration panel did not award Black Rock any sum for the improvements it made to the assets transferred by Roasters and Resilient to Black Rock during the two years that Black Rock operated the business. During negotiations with Wake Up and Dillanos, Black Rock insisted on $1,150,000.00 in compensation, allegedly the value of the improvements, before it transferred the assets to Wake Up and Dillanos. Wake Up and Dillanos denied that it must pay Black Rock any compensation. The two sides contentiously, but promptly, negotiated the logistics needed for the transfer of assets. Wake Up and Dillanos agreed to give Black Rock a credit of $375,000 for the improvements. The efforts resulted in a provisional settlement agreement that outlined the process for closing the December 2020 APA and transferring the former assets of Roasters and Resilient to Wake Up and Dillanos.

The agreement included a non-disparagement provision, noncompete clauses, and employee transition clauses. The agreement also revised the December 2020 APA escrow agreement needed to close the sale. Section 1.4 of the revised escrow agreement addressed the release of the purchase price or escrow funds. On the second and final

release of the purchase funds, section 1.4(c) directed the escrow agent to deduct the value of outstanding gift and loyalty cards and the value of accrued personal time of employees. Wake Up agreed to assume those liabilities to customers and employees.

The resolution reached between Wake Up and Dillanos, on the one hand, and Black Rock, on the other hand, needed the approval of Roasters and Resilient or a court order compelling Roasters and Resilient to sign the provisional settlement agreement and the revised escrow agreement. Wesley and Shannon Heyden, Roasters, and Resilient refused to sign.

## PROCEDURE

We now reach the motion and court order that gives rise to this appeal. Wake Up, Dillanos, Black Rock, and SVN moved the superior court to compel Roasters and Resilient to sign the provisional settlement agreement and the revised escrow agreement. In support of the motion, movants Wake Up, Dillanos, and Black Rock argued that the provisional settlement agreement and the revised escrow agreement corresponded to the December 2020 APA and the arbitration award. The movants also contended that Roasters and Resilient suffered no harm by the provisional settlement agreement and the revised escrow agreement. Roasters and Resilient disagreed. Roasters and Resilient insisted that the new escrow agreement took money from them. Wake Up and Dillanos insisted that section 2.6 of the December 2020 APA required an escrow agreement and

that Roasters and Resilient already approved the proposed form during the previous November. Black Rock contended that, if Roasters and Resilient deemed the escrow agreement shortchanged it on the distribution of funds, it had a remedy to seek arbitration conducted by a Certified Public Accountant in accordance with the December 2020 APA.

The superior court entertained argument of counsel on April 14, 2023. During argument, Wake Up and Dillanos emphasized that they had repeatedly requested an accounting from Roasters and Resilient regarding the alleged transfer of working capital. Black Rock maintained that no working capital was transferred, and that the Black Rock APA with Roasters and Resilient contained neither a provision for such a transfer nor a defined amount.

On April 14, 2023, and because of their counsel's representations that Roasters and Resilient were willing to sign the December 2020 APA, the superior court ordered Roasters and Resilient to execute the APA. The court further directed Roasters and Resilient to sign the revised escrow agreement, as amended to remove a $477,000 holdback provision. On April 17, 2023, the superior court entered an order confirming its ruling. The order reads:

> IT IS FURTHER ORDERED ADJUDGED AND DECREED that Wake Up's and Dillanos' Motion to Compel the Heydens to Specifically Perform is GRANTED. The Heydens are hereby ordered to sign the December 18, 2020 APA by or before the close of business on Monday, April 17, 2023. The Heydens are also hereby Order[ed] to sign Escrow

13

Instructions revised in two material respects from the one attached to Laura Weselmann's Declaration at Exhibit E: (i) that Black Rock's request to hold back $477,000 from the Purchase Price as part of the initial consideration Black Rock paid for Roasters' Assets is stricken from the Escrow Agreement; and (ii) that by the Heydens' signature on the APA and Escrow Agreement, Wake Up and Dillanos promise that they waive any right to make a claim for assets, furniture or fixtures not transferred by Black Rock under the Provisional Settlement Agreement, Escrow Agreement, Transfer, Transition, and Temporary License Agreement, Assignment and Assumption Agreements or any other agreement and that the Heydens provide a signed copy of the Revised Escrow Instructions no later than the close of business on Monday, April, 17, 2023.

CP at 4372.

On February 15, 2024, the superior court awarded Wake Up and Dillanos an additional $132,726.00 in attorney fees and $8,523.12 in costs against Roasters and Resilient. The court also awarded SVN $37,675.00 in attorney fees and $355.55 in costs against Roasters and Resilient. The court found that the reluctance of Roasters and Resilient to sign the APA and escrow instructions, between December 20, 2022, and October 16, 2023, caused the incurring of the fees and costs.

LAW AND ANALYSIS

On appeal, Roasters and Resilient contend that the revised escrow agreement conflicts with the December 2020 APA. According to Roasters and Resilient, because the arbitration award specifically enforced the December 2020 APA, the revised escrow

14

agreement also diverges from the arbitration award. Thus, Roasters and Resilient

challenge the order compelling it to sign the revised escrow agreement.

We list the four purported differences between the December 2020 APA and the

revised escrow agreement asserted by Roasters and Resilient:

1. The APA obligates Roasters and Resilient to transfer to Wake Up
and Dillanos all assets of the sellers' businesses excluding all tangible
personal property listed on Schedule 2.1(a), inventory listed in Schedule
2.1(b), and all accounts receivable.
The revised escrow agreement did not exclude any tangible personal
property from the property to be transferred and specifically required
transfer of a forklift.

2. The APA listed the purchase price as $8 million with the final
price paid based on an adjustment for working capital.
The revised escrow agreement purchase price begins at $7,568,368,
but is lowered by $512,130 of liabilities to a new figure of $6,926,738.
(We note that $512,130 deducted from $7,568,368 does not equal
$6,926,738). The $512,130 liabilities are the sum of $48,668 in personal
time off for employees and $468,461 in outstanding card customer
liabilities.

3. We encounter difficulty following Roasters and Resilient's third
claim of difference. The difference may stem from the APA imposing no
obligation on Wake Up and Dillanos to assume liability for employee
accrued time off, while the revised escrow agreement imposes this
obligation on Wake Up and Dillanos.

4. We also encounter difficulty following Roasters and Resilient's
fourth alleged difference. The difference may stem from the APA
obligating Wake Up and Dillanos to pay the entire $8 million at closing
with the adjustments for working capital to occur ninety days later. In turn,
the revised escrow agreement immediately deducts, before payment of any
amount, $512,000 in assumed liabilities of employee personal time off and

15

customer accrued liabilities.  According to Roasters and Resilient, the APA
identifies a method to calculate the inventory and working capital post-
closing, but the revised escrow agreement does not.

Appellants Br. Am. at 50-53.

## Arbitration

Wake Up, Dillanos, and Black Rock ask this court to dismiss the appeal on the

basis that Roasters and Resilient failed to follow the dispute-resolution process outlined

in section 2.9 of the December 2020 APA.  We agree to do so.

Section 2.9 of the APA demanded arbitration of any dispute concerning the final

amounts transferred at closing.  That section afforded Roasters and Resilient fifteen days

from receipt of the final determination of the final closing balance sheet to object to the

amount paid as incorrect.  Thereafter, the parties would seek to resolve the dispute.  If no

resolution ensued within 30 days, a Certified Public Accountant would resolve the

dispute.  In December 2020, Roasters and Resilient agreed to sign the APA.  In April

2023, the superior court ordered Roasters and Resilient to sign.  We assume they obeyed

the court order.

RCW 7.04A.060 enforces an agreement to submit to arbitration any existing or

subsequent controversy arising between the parties to the agreement.  Washington public

policy strongly favors arbitration as a method of dispute resolution.  *Burnett v. Pagliacci
Pizza, Inc*, 196 Wn.2d 38, 48, 470 P.3d 486 (2020).

16

We conclude that section 2.9 of the APA demanded that Roasters and Resilient submit to arbitration the disputes now on appeal. Roasters and Resilient complain that the revised escrow agreement compelled it to transfer, at closing, a forklift and perhaps other personal property. The closing has already occurred. Roasters and Resilient has failed to disclose whether it was injured by this purported change in the escrow agreement. Regardless, any extra obligation would be reflected in the amount transferred to Roasters and Resilient at closing. Thus, the two entities should have sought arbitration.

Roasters and Resilient also complain about the revised escrow agreement's purported change in calculating working capital, which in turn influenced the purchase price and the amount paid to them at closing. This purported change in the escrow agreement directly involved the final payment blanketed by the arbitration provision. A Certified Public Accountant may be better positioned to resolve any dispute as to the amounts owed, if any.

Roasters and Resilient write that Wake Up and Dillanos contend Roasters and Resilient should have sought arbitration rather than defend the motion to compel brought by Wake Up and Dillanos. Roasters and Resilient also contend they could not seek arbitration of amounts owed or they would have been in contempt of the April 17, 2023, order to close the sale. We do not construe Wake Up and Dillanos' contentions as

Roasters and Resilient do. Wake Up and Dillanos contend that, once Roasters and Resilient obeyed the court order and signed the December 2020 APA, the two should have sought arbitration if it believed it was owed more, after the closing, rather than file this appeal. This action would not have disobeyed the court order.

We recognize that the April 17, 2023, court order demanded that Roasters and Resilient sign a revised escrow agreement that included terms to which they claim they never agreed. All those terms, however, impact the amount received by Roasters and Resilient at the final closing. The Certified Public Accountant could address those contentions. We further note that the sale has closed, and Roasters and Resilient have failed to present to this court any calculation of money lost because of being compelled to sign the revised escrow agreement.

## Attorney Fees

The superior court granted Wake Up, Dillanos, and SVN attorney fees and costs incurred in the litigation between December 2022 and March 29, 2023, when Wake Up and Dillanos brought the motion to compel Roasters and Resilient to sign the revised escrow agreement and the December 2020 APA. On appeal, Roasters and Resilient contend that no evidence supported the trial court's finding that it caused Wake Up, Dillanos, and SVN to incur fees and costs during post-arbitration litigation from December 2022 to March 29, 2023.

Respondents Wake Up, Dillanos, and SVN contend that Roasters and Resilient failed to comply with RAP 10.3(a)(4) and 10.3(g), which require appellants to assign error to specific findings of fact and conclusions of law by number. Nevertheless, RAP 1.2(a) encourages appellate courts to decide cases on the merits rather than dismiss them for technical procedural defects. *Mine Holding Trust v. Pavlish*, 32 Wn. App. 2d 727, 738, 559 P.3d 517 (2024). Respondents have not shown any compelling reason, such as undue burden on the court or prejudice to their case, that would justify denying review on this basis. In a case wherein the court understands the nature of the appeal, the appellant argues the relevant issues in the body of the brief, and the appellant supplies citations so that the court is not greatly inconvenienced and the respondent is not prejudiced, the appellate court should exercise its discretion to consider the merits of the case or issue. *State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995).

Attorney fees are recoverable by the prevailing party when recovery is permitted by contract, statute, or some recognized ground of equity. *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 143, 930 P.2d 288 (1997). RCW 7.04A.250(3) grants the trial court discretion to award a prevailing party reasonable fees incurred after obtaining an arbitration award related to the ministerial task of confirming the arbitration award or to enforce the arbitration award.

19

A trial court's decision awarding attorney fees and costs is reviewed for abuse of discretion. *In re Estate of Black*, 153 Wn.2d 152, 173, 102 P.3d 796 (2004). An appellate court may reverse such an award only if the trial court exercised its discretion on untenable grounds or for untenable reasons. *Baker v. Fireman's Fund Ins. Company.*, 5 Wn. App. 2d 604, 613, 428 P.3d 155 (2018). Absent a clear showing that the trial court abused its discretion based on the specific facts and circumstances, the fee determination will not be disturbed. *In re Estate of Black*, 153 Wn.2d 152, 173 (2004).

Roasters and Resilient contend they did not delay, obstruct, or increase the costs associated with confirming or implementing the final arbitration award, aside from opposing Wake Up's motion to compel execution of the December 2020 APA and escrow agreement. Roasters and Resilient also assert that they exerted efforts to consummate specific performance, including the appointment of a special master, execution of the master's plan, and attempts to compel Black Rock's compliance. The record, however, contradicts these claims.

All parties agreed to arbitrate, forgo any appeal, and implement the award within sixty days. Yet, after the arbitration award, Roasters and Black Rock refused to cooperate in transferring the coffee businesses to Wake Up and Dillanos and instead filed motions delaying the process. Roasters and Resilient concede they refused to participate in the post-arbitration proceedings necessary to implement the award. Rather than sign

20

the December 2020 APA and work to incorporate its provisions into the revised escrow agreement and Provisional Settlement Agreement, Roasters chose to remain on the sidelines. This obstinance compelled Wake Up, Dillanos, and SVN to seek judicial intervention to enforce compliance. The trial court's findings of delay were supported by evidence sufficient to persuade a rational, fair-minded person of their truth. *Nguyen v. City of Seattle*, 179 Wn. App. 155, 163, 317 P.3d 518 (2014).

Roasters and Resilient claim that the superior court merely adopted the respondents' requests for fees and costs. They assert that some of the fees may not be related to enforcing the arbitration award or may be for redundant work. The record and the amount awarded belie this argument. The court conducted an independent review and limited the award to fees incurred between the December 20, 2022, Judgment and the October 16, 2023, Satisfaction of Judgment. Applying the "lodestar method," the court first examined billing records to determine the number of hours reasonably expended on the litigation. *Mahler v. Szucs*, 135 Wn.2d 398, 435, 957 P.2d 632 (1998). It then multiplied that total by a reasonable hourly rate to arrive at the lodestar fee. *Moran v. Kingen*, 166 Wn.2d 526, 539, 210 P.3d 995 (2009). The court applied this standard and entered detailed findings showing how Roasters and Resilient's conduct led those fees to be incurred. Those findings provide an adequate record on review to support the fee award. *Mahler v. Szucs*, 135 Wn.2d 398, 435 (1998).

We affirm the award of reasonable attorney fees and costs granted Wake Up, Dillanos, and SVN by the superior court. We also award the three parties reasonable attorney fees and costs against Roasters and Resilient for fees and costs incurred on appeal under section 10.2 of the December 2020 APA and RCW 7.04A.250(3).

CONCLUSION

We dismiss Roasters and Resilient's appeal because of their obligation to arbitrate the dispute. We affirm the superior court's award of reasonable attorney fees and costs to Wake Up, Dillanos, and SVN. We grant the three respondents reasonable attorney fees and costs incurred on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:


_____
Murphy, J.

_____
Lawrence-Berrey, C.J.

22